# Exhibit A

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

D. S-S., a minor, by J.S., guardian,

Plaintiff,

v.

JOHN DOE and LYFT, INC.,

Defendants.

**CIVIL DIVISION**

No:

Issue:

Code:

**COMPLAINT IN CIVIL ACTION**

Filed on behalf of Plaintiff:
D.S-S. by J.S.

Counsel of Record for this Party:

Erin K. Rudert, Esquire
PA I.D. No. 200432
Email: er@ainsmanlevine.com

Danielle M. Deklewa, Esquire
PA I.D. No. 325731
Email: dd@ainsmanlevine.com

AINSMAN LEVINE, LLC
Firm No. 975
310 Grant Street, Suite 1500
Pittsburgh, PA 15219

(412) 338-9030 – Phone
(412) 338-9167 – Fax

**JURY TRIAL DEMANDED**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| D.S-S., a minor, by J.S., guardian, | ) | **CIVIL DIVISION** |
| | ) | |
| Plaintiff, | ) | No: |
| | ) | |
| v. | ) | Issue: |
| | ) | |
| JOHN DOE and LYFT, INC., | ) | Code: |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NOTICE TO DEFEND**

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**LAWYER REFERRAL SERVICE OF THE**
**ALLEGHENY COUNTY BAR ASSOCIATION**
**436 7th Avenue, Suite 3**
**Pittsburgh, PA 15219**
**(412) 261-6161**

**JURY TRIAL DEMANDED**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| D.S-S., a minor, by J.S., guardian, | ) | **CIVIL DIVISION** |
| | ) | |
| Plaintiff, | ) | No: |
| | ) | |
| v. | ) | Issue: |
| | ) | |
| JOHN DOE; LYFT, INC.; and ABC CORP.; | ) | Code: |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes the Plaintiff, D. S-S., a minor, by J.S, guardian, by and through her attorneys, ERIN K. RUDERT, ESQUIRE, DANIELLE M. DEKLEWA, ESQUIRE, and AINSMAN LEVINE, LLC, and files the within Complaint, setting forth as follows in support thereof:

1. Plaintiff, D.S-S., is a female minor child and is currently 15 years of age and is a resident of Allegheny County and the Commonwealth of Pennsylvania.

2. J.S. is the guardian and mother of minor-Plaintiff, and currently resides in Coraopolis, Allegheny County, Pennsylvania 15108.

3. Defendant, John Doe, is an adult male who was operating a vehicle as a Lyft driver on December 27, 2020, and who accepted a ride through the Lyft application to pick up a passenger from 516 Groveton Drive, Coraopolis, Allegheny County, Pennsylvania 15108, at or around 11:30 p.m.

4. It is believed and therefore averred that the account holder for which John Doe accepted the ride through the Lyft application was Joshua Davon Austin-Pollard ["Austin-Pollard].

5. Defendant, Lyft, Inc., is as Delaware corporation headquartered in California with a corporate address of 185 Berry Street, #5000, San Francisco, California 94107.

6. At all times material hereto, Lyft, Inc., was registered with the Pennsylvania Department of State to operate within and throughout Pennsylvania, including in the County of Allegheny, and regularly and traded and did business in Allegheny County.

7. Lyft operated a ride-hailing transportation service through which users may request and pay for on-demand rides, either for themselves or for others by using a downloadable smart phone-based application.

8. In order to service the users of the Lyft app who are requesting on demand rides, Lyft has hired millions of drivers who use the Lyft app to provide on-demand transportation to the riders using the Lyft app to make transportation requests.

9. The Lyft application functions differently for the driver than how it functions for the passenger. For the passenger, the Lyft application shows the passenger the driver's first name, vehicle type, license plate number, driver "rating," location and arrival time. For the driver, the Lyft application shows a username or name selected by the passenger, and at times a picture of the account holder (who was not guaranteed to be the passenger).

10. The Lyft application during the times relevant to this incident allowed a passenger to request a ride for another person who was not the Lyft account holder or Lyft user. The Lyft user did not have to be with the passenger, nor did the Lyft user have to be geographically proximate to the intended passenger for the application to allow the Lyft user to create a ride for someone else. The intended passenger was not required to download the Lyft app to accept the ride, and therefore little or no information about the intended passenger was communicated through the Lyft app to the Lyft driver.

11. Lyft operates throughout the country both in its own name and through subsidiary companies. Lyft drivers are required to sign a contract and/or Service Agreement with Lyft or one of its subsidiaries in order to become a Lyft driver.

12. Lyft also requires its drivers to pass a background check, driver screening, provide a driver's license, and confirm vehicle registration and insurance information before allowing a driver to begin driving for Lyft.

13. In some circumstances, Lyft requires drivers to attend training courses as a requirement to become a Lyft driver.

14. After individuals become Lyft drivers, Lyft maintains a significant degree of control over the driver, instructing the driver on the expected quality of the rides, issuing community guidelines, imposing cleanliness requirements for vehicles, prohibiting smoking in the vehicle even when the vehicle is not being used for Lyft services, making recommendations about what items to stock in the vehicle, suggesting radio station choices, and regulating the acceptable topics of conversation for drivers to address with riders. Lyft retains the ability to terminate a driver's employment for failing to maintain compliance with Lyft's requirements, and Lyft can unilaterally change the requirements for quality standards at any time.

15. Lyft drivers are expected to accept all ride requests while they are logged in to the Lyft app, as the availability of drivers to service Lyft's passenger users is vital to the success and profitability of the platform.

16. It is believed and therefore averred that drivers who reject and/or cancel too many ride requests risk facing discipline in the form of suspension or termination. If a driver begins to cancel or reject too many rides, the driver's continued ability to earn income and remain employed with Lyft can be jeopardized.

17. At all times material hereto, Lyft had sole discretion to set the drivers' rate of pay for the service the drivers provided through the Lyft app. The drivers were not aware of the compensation they would receive for each ride prior to the driver accepting the ride, and Lyft's use of promotional offers or discounts could reduce the driver's income without notice to the drivers.

18. Lyft further prevents its drivers from accepting street hails, soliciting payment of fares outside of the Lyft app, picking up individuals who did not book travel through the Lyft app, and communicating with passengers about booking future rides.

19. Lyft has the power to terminate drivers with or without cause.

20. Lyft maintains an expectation for its drivers that they will accept all ride requests while logged into the app, as Lyft's financial success and continued profitability depend on Lyft riders being able to quickly and reliably obtain a ride upon request, and Lyft tracks this data through maintaining acceptance rates for drivers.

21. Lyft maintains an expectation for its drivers that they will complete all accepted ride requests, and Lyft tracks cancelation rates for drivers on accepted rides and tells drivers that they must "choose carefully" when canceling rides as their "account could be at risk."

22. Lyft exercises control over its drivers as far as ride acceptance and/or cancelation by subjecting drivers to discipline, including suspension or termination, if a driver has rejected or canceled "too many" ride based on Lyft's standards.

23. The incident described herein occurred on or about December 27, 2020, into the early morning hours of December 28, 2020, in and around Coraopolis, Pennsylvania, and Pittsburgh, Pennsylvania.

24. At the time of the incident in question, minor-Plaintiff was 11 years of age.

25. On or about December 27, 2020, and for some time prior thereto, minor-Plaintiff was in communication with another minor female child ["J"].

26. It is believed and therefore averred that Austin-Pollard had been in communication with minor-Plaintiff through J, or was aware of J's communication with minor-Plaintiff, and encouraged, through J, for minor-Plaintiff to leave her house under the pretense of meeting J in person at Austin-Pollard's house.

27. Minor-Plaintiff, being then 11 years of age, had no transportation to reach Austin-Pollard's house in Pitcairn, a distance of approximately 30 miles from minor-Plaintiff's residence.

28. Austin-Pollard obtained minor-Plaintiff's address through J, and ordered a ride through his account with Defendant, Lyft, Inc., from a location near minor-Plaintiff's residence address to a T-station in the City of Pittsburgh.

29. It is believed and therefore averred that Defendant, John Doe, accepted the ride request placed by Austin-Pollard through the Lyft application, and proceeded to the designated ride pick up location, at or around 11:30 p.m.

30. At the time of the incident, minor-Plaintiff was an 11 year old child, and was wearing pajamas with sweatpants on top of her pajamas, a hoodie sweatshirt, and was not wearing makeup.

31. When John Doe arrived at the appointed pick up location, minor-Plaintiff was outside and was on the phone with "J."

32. In December 2020, it is believed and therefore averred that Lyft had a mask policy in place that required all occupants of Lyft vehicles to wear a mask.

33. Minor-Plaintiff was not wearing a mask when Defendant, John Doe, arrived at her residence, and prior to minor-Plaintiff entering the Lyft, Defendant Doe spoke with minor-Plaintiff

and requested that she put on a mask. Minor-Plaintiff did not have a mask, and told Defendant Doe of her lack of a mask, which prompted "J," who was on speakerphone, to comment that she "hadn't paid for this ride for nothing."

34. It is believed and therefore averred that Defendant Doe was able to hear the telephone interaction between minor-Plaintiff and "J" – also a minor – and thereafter allowed minor-Plaintiff to enter the Lyft vehicle despite not having a mask.

35. At no time prior to allowing minor-Plaintiff to enter the Lyft vehicle did Defendant Doe make any attempt to ascertain minor-Plaintiff's age and/or confirm that minor-Plaintiff was 18 years of age or older.

36. At the time of the incident in question, minor-Plaintiff was 11 years old and her appearance was that of a pre-pubescent child who could not be reasonably believed to be 18 years of age or older.

37. At no time prior to allowing minor-Plaintiff to enter the Lyft vehicle did Defendant Doe make any attempt to ascertain the relationship of minor-Plaintiff to Austin-Pollard, the Lyft account holder through which the ride was requested.

38. Despite having a specific interaction with minor-Plaintiff regarding the mask policy, which interaction gave Defendant Doe additional time and opportunity to observe minor-Plaintiff's overall appearance, demeanor, and maturity (or lack thereof) while she was still outside of the Lyft vehicle, Defendant Doe allowed minor-Plaintiff to enter the Lyft vehicle and began the Lyft ride without verifying minor-Plaintiff's age.

39. Minor-Plaintiff entered the Lyft vehicle, and Defendant Doe began the Lyft ride, transporting minor-Plaintiff toward downtown Pittsburgh.

40. During the course of the ride, minor-Plaintiff remained on the phone with J, with the phone on speaker, and when the driver asked minor-Plaintiff specifically where she was going, J answered the driver and gave him information about which T-station where he should drop off minor-Plaintiff.

41. During the course of the ride, minor-Plaintiff remained on the phone with J, who at the time is believed to have been 13 or 14 years old, and engaged in conversation with J, thereby giving the Defendant Doe additional opportunity to hear minor-Plaintiff conversing with another minor child.

42. At no point during the approximately thirty (30) minute ride did Defendant Doe attempt to verify minor-Plaintiff's age, despite having seen her, spoken to her, and heard her continuously interacting with another minor child.

43. Defendant Doe, upon reaching the destination of the Lyft ride, left minor-Plaintiff, an unaccompanied 11-year-old child, in downtown Pittsburgh at a T-station at or around midnight on December 28, 2020, at the location specified by Austin-Pollard through the Lyft app and confirmed by J on speakerphone during the course of the transport.

44. Shortly after Defendant Doe allowed minor-Plaintiff to exit his vehicle as described above, Austin-Pollard picked up minor-Plaintiff and took minor-Plaintiff to his residence, where he sexually assaulted and/or raped minor-Plaintiff.

45. At no time was minor-Plaintiff required to download the Lyft application in order to accept or complete the Lyft ride, nor was she required to verify her age in any manner prior to or during the Lyft ride.

46. As a direct and proximate result of Defendants' individual, joint, several, combined, and/or vicarious negligence and recklessness, minor-Plaintiff suffered severe and serious personal

injuries, including but not limited to unwanted sexual contact, sexual trauma, exposure to sexually transmitted diseases, post-traumatic stress disorder, depression, anxiety, and other injuries, the full nature and extend of which are not currently known.

47. As a direct and proximate result of Defendants' individual, joint, several, combined, and/or vicarious negligence and recklessness, minor-Plaintiff has suffered damages compensable under Pennsylvania law, for physical and emotional pain and suffering, loss of enjoyment life, medical expenses, embarrassment, humiliation, and loss of earning capacity.

48. At all times material hereto, Defendant Doe knew or should have known through the exercise of reasonable care that minor-Plaintiff, then 11 years old, was a minor child and was traveling alone.

49. At all times material hereto, Defendant Doe acted negligently and/or recklessly in transporting minor-Plaintiff for a Lyft ride, when Defendant knew or should have known that minor-Plaintiff was an unaccompanied minor, had no personal knowledge of where she was going, and was being transported at or around midnight into downtown Pittsburgh, to be left at a closed T-Station.

50. At all times material hereto, Defendant Doe acted negligently and/or recklessly in failing to ascertain whether minor-Plaintiff was an adult prior to allowing her to enter the vehicle.

51. At all times material hereto, Defendant Doe acted negligently and/or recklessly in continuing the Lyft ride when he knew or reasonably should have learned during the course of the Lyft ride that minor-Plaintiff was a minor child, being transported through someone else's account, to a location unknown to minor-Plaintiff.

52. At all times material hereto, Defendant Doe was acting as an employee, agent, and/or servant of Defendant, Lyft, Inc., and was operating the vehicle used to transport minor-

Plaintiff within the course and scope of said employment and in furtherance of Defendant, Lyft, Inc.'s, business pursuits.

53. At all times material hereto, Defendant, Lyft, Inc., had in place a written policy that minor children were not permitted to be transported unaccompanied, but Defendant did not have in place sufficient driver training policies and safety mechanisms to effectively implement its written policy.

54. At all times material hereto, Defendant, Lyft, Inc., had in place a written policy that drivers were permitted to ask for age verification prior to transporting individuals, but the policy was permissive.

55. At all times material hereto, Defendant Lyft, Inc., had actual knowledge that Defendant's services and application, particularly the ability through the application to request a ride for another person, would be and had previously been utilized in the manner described herein to facilitate the sex trafficking of minor children.

56. At all times material hereto, Defendant Lyft, Inc., had actual knowledge that its platform had been used in the past and was at risk for being used to sex traffic minor children.

57. Defendant Lyft, Inc., did not institute effective and/or comprehensive policies within its system in order to address the risks associated with the Lyft system being used for child sex trafficking.

58. Defendant Lyft, Inc., did not institute effective and/or comprehensive policies of driver training in order to educate drivers on the risks of sex trafficking and how to spot signs that a person may be at risk during the course of a Lyft ride.

59. Defendant Lyft, Inc., did not implement a standardized protocol for drivers to report to Lyft that they were dispatched for a ride during which they believe the passenger might be being trafficked.

60. At all times material hereto, Defendant Lyft, Inc., knew or should have known that the feature of the application that allows Lyft users to request rides for individuals who are not the account holder and/or who are not users of the Lyft application created heightened risks of harm to all individuals involved in the Lyft transaction.

61. At all times material hereto, Defendant Lyft, Inc., did not have any requirements for passengers accepting a Lyft ride arranged for them by someone else to download the Lyft app and create a user profile, including confirmation and verification of the passenger's age.

62. At all times material hereto, Defendant Lyft, Inc., knew or should have known that its financial structure and the control exerted by it over its drivers through the penalties for drivers who cancel rides created an incentive for drivers to complete rides even when the drivers knew or should have known that the ride created a substantial risk of harm to the passenger.

63. Defendant Lyft knew or should have known that the protocol through which drivers were provided with information sufficient to identify a passenger as a third party rider or a Lyft user created an unacceptable risk that a driver would accept a ride for an unaccompanied minor child.

64. Defendant Lyft, Inc., knew or should have known that the structure of the third party ride request system created a significant opportunity and risk that the Lyft app could be used for sex trafficking of minors.

65. Defendant, John Doe, knew or should have known from the circumstances of the third party ride involving minor-Plaintiff that minor-Plaintiff was at risk of being a trafficked individual.

66. At all times material hereto, it is believed and therefore averred that Defendant, John Doe, was an employee, agent, servant, and/or assign or Defendant, Lyft, Inc., such that Defendant, Doe's negligence, carelessness, and reckless are imputed to Defendant, Lyft, Inc., under the doctrines of respondeat superior and/or vicarious liability.

## COUNT I

**D. S-S., a minor, by J.S., guardian, v. Lyft, Inc.**

**Negligence**

67. All preceding paragraphs of this complaint are incorporated by reference herein.

68. By providing transportation to the general public using its application and network of drivers, Defendant Lyft, Inc. owed a duty to act with due and reasonable care towards the public and in particular towards its own passengers, including minor-Plaintiff.

69. Since prior to the time of the attack on minor-Plaintiff, Defendant Lyft, Inc., has had actual knowledge that its services have been used to facilitate sex trafficking and has never adapted or improved its safety features in any meaningful way to limit and/or prevent the use of its services in transporting children for sex.

70. Defendant Lyft, Inc., does not require its drivers to undergo training regarding sex trafficking or identifying the risk factors for sex trafficking/

71. Defendant Lyft, Inc., does not provide its drivers with sufficient resources to allow its drivers to educate themselves, through Lyft, regarding who to identify the risk factors for sex trafficking while transporting passengers.

72. Defendant Lyft, Inc., does not have mandatory driver policies in place requiring drivers to ask for age verification of passengers nor does Lyft have any policies in place to punish drivers who transport unaccompanied minors in Lyft vehicles.

73. Defendant Lyft, Inc., does not provide its drivers with sufficient training to understand how Lyft's driver rating systems function so that drivers fully understand when and under what circumstances the driver can cancel an accepted ride without the cancelation being counted against the driver in the rating system.

74. Defendant Lyft, Inc., does not provide its drivers with sufficient training to understand how Lyft's cancelation feature works within the app so that the driver knows what options are available for cancelation.

75. Defendant Lyft, Inc., does not provide a compensation structure so that drivers are not financially penalized for accepting and responding to a ride that the driver then cancels.

76. Defendant Lyft, Inc., does not provide training and driver resources in a sufficient number of languages or in a sufficient number of formats to allow all of its drivers to appropriately access and utilize any training resources provided.

77. Defendant Lyft, Inc., does not track or verify that its drivers have participated in any particular trainings or training sessions, such that Lyft, Inc., has no mechanisms in place to ensure that its drivers are appropriately educated and knowledgeable on any of Lyft's existing operating protocols.

78. Defendant, Lyft, Inc., does not have adequate policies in place for a driver to follow if the driver initiates a ride and picks up a passenger, but then during the course of the ride (i.e., neither at the point of origin or point of drop off) has reason to believe that the person in the vehicle is a minor child.

79. Defendant, Lyft, Inc., does not have adequate policies in place for a driver to follow if the driver initiates a ride and picks up a passenger, but then during the course of the ride (i.e., neither at the point of origin or point of drop off) has reason to believe that the person in the vehicle is a victim of trafficking.

80. Defendant, Lyft, Inc., did not provide adequate training to Defendant, Doe, as to what Defendant, Doe, should do during an active ride if during the course of the ride, Defendant, Doe, came to believe that the passenger in the vehicle was a minor child and/or a potential victim of trafficking.

81. Defendant Lyft, Inc., did not interview, check the references of, provide training to, or advise Defendant, John Doe, of any policies regarding the non-transportation of minors or the mechanisms of identifying human trafficking when Defendant, Doe, was hired.

82. Despite failing to reasonably endeavor to investigate whether Defendant, Doe, was competent to transport vulnerable passengers, Defendant Lyft, Inc., employed Defendant, Doe, as a driver.

83. Defendant Lyft, Inc., knew or should have known that assigning and/or allowing Defendant, Doe, to transport passengers, particularly vulnerable passengers late at night, when Defendant, Doe, had not been adequately trained regarding the risk factors and identification of situations of human trafficking, created an unreasonable risk of harm to Minor-Plaintiff, particularly when Defendant Lyft, Inc., was on notice that Lyft services were being used for human trafficking purposes.

84. Defendant Lyft, Inc., failed to take measures to adequately supervisor and monitor its drivers, including Defendant, Doe.

85. Defendant Lyft, Inc.'s, negligence, carelessness, and recklessness, as set forth herein, led to and caused minor-Plaintiff to be sex trafficked through the Lyft service, and caused minor-Plaintiff to be kidnapped, held, and sexually assaulted, and to suffer and sustain the injuries and damages set forth above, which Plaintiff claims from Defendant, Lyft, Inc.

86. Defendant Lyft, Inc.'s, conduct described herein was done with reckless and wanton disregard for the safety of the public, including minor children, such as minor-Plaintiff, who are particularly vulnerable and targeted by sex traffickers, pedophiles, and other predators specifically for their youth, immaturity, and vulnerability. Plaintiff therefore demands punitive damages of Lyft, in addition to compensatory damages for minor-Plaintiff's injuries.

WHEREFORE, Plaintiff demands judgment against Lyft, Inc., for compensatory and punitive damages in an amount in excess of the arbitration limits of this jurisdiction, together with costs and interest.

**A jury trial is demanded.**

## COUNT II

### D. S-S., a minor, by J.S., guardian, v. John Doe and Lyft, Inc.

### Negligence

87. All preceding paragraphs of this complaint are incorporated by reference herein.

88. Minor-Plaintiff's injuries and damages detailed above were caused directly and proximately by the negligence, carelessness, and recklessness of Defendant, John Doe, as described above and in the following particulars:

a. In transporting minor-Plaintiff, unaccompanied, on a third-party ride, and leaving minor-Plaintiff, unaccompanied, in downtown Pittsburgh at night;

b. In failing to ascertain whether minor-Plaintiff was an adult prior to allowing minor-Plaintiff into the Lyft vehicle;

c. In failing to identify certain signs of human trafficking present in minor-Plaintiff's ride, including that it was a third-party ride, minor-Plaintiff did not know where she was going, and minor-Plaintiff was being pressured to complete the ride by J while on the phone;

d. In sex trafficking minor-Plaintiff into the care, custody, and control of her rapist.

89. Defendant Doe's conduct described herein was done with reckless and wanton disregard for the safety of the public, including minor children, such as minor-Plaintiff, who are particularly vulnerable and targeted by sex traffickers, pedophiles, and other predators specifically for their youth, immaturity, and vulnerability. Plaintiff therefore demands punitive damages of Defendant, Doe, in addition to compensatory damages for minor-Plaintiff's injuries.

90. At all times material hereto, it is believed and therefore averred that Defendant, John Doe, was an employee, agent, servant, and/or assign or Defendant, Lyft, Inc., such that Defendant, Doe's negligence, carelessness, and reckless are imputed to Defendant, Lyft, Inc., under the doctrines of respondeat superior and/or vicarious liability, and that Defendant, Lyft, Inc., is liable for the same.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and punitive damages in an amount in excess of the arbitration limits of this jurisdiction, together with costs and interest.

**A jury trial is demanded.**

AINSMAN LEVINE, LLC

*/s/ Erin K. Rudert, Esquire*
Erin K. Rudert, Esquire
Attorney for Plaintiffs

**VERIFICATION**

I verify that the statements made in the COMPLAINT IN CIVIL ACTION are true and correct; that the attached COMPLAINT IN CIVIL ACTION is based upon information which I have furnished to my counsel and information which has been gathered by my counsel in the preparation of the lawsuit. The language of the COMPLAINT IN CIVIL ACTION is that of counsel and not the plaintiff. I have read the COMPLAINT IN CIVIL ACTION and to the extent that the COMPLAINT IN CIVIL ACTION is based upon information which I have given to my counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the content of the COMPLAINT IN CIVIL ACTION is that of counsel, I have relied upon counsel in making this Verification. I understand that false statements herein made are subject to the penalties of 18 Pa. C.S. §4904 relating to the unsworn falsification to authorities.

DATE: 12-19-22

[redacted]